LILLIAN G. NETUSIL, APPELLANT, V. JOHN J. NOVAK, APPELLEE.

FILED FEBRUARY 27, 1931.   No. 27449.

*North, Caldwell & Gillogly,* for appellant.

*Harry B. Fleharty, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

This is an action for damages against the owner of a dog. The petition alleges that the dog was vicious, which fact was known by the defendant prior to the attack by said dog upon the plaintiff. The defendant's answer denies the allegations of the petition and further avers that the plaintiff's physical condition is not due to any attack or frightening by defendant's dog.

Upon a trial of the case, the court overruled a motion to direct a verdict at the close of all the testimony and submitted the case to the jury. The jury returned a verdict for the plaintiff. A motion for new trial was filed, argued and taken under consideration by the trial judge. Thereupon, the court, on its own motion, set aside the verdict of the jury and the judgment entered thereon, referred back to the motion to direct a verdict and dismissed the case.

In passing, we observe that the procedure followed by the trial court is in line with the modern prevailing tendency toward practicalism which seeks to shorten and to simplify judicial procedure. It is the well-established law of this state, as well as of others, that the trial court has the right and power to vacate, set aside, amend or correct any judgments or orders made by it during the same term. Such orders may be entered upon the court's own motion as well as upon the motion of counsel. *Douglas County v. Broadwell,* 96 Neb. 682; *Carmony v. Carmony,* 112 Neb. 651; *Occidental Building & Loan Ass'n v. Adams,* 96 Neb. 454; *Young v. Estate of Young,* 103 Neb. 418; *Harris v. State,* 24 Neb. 803; *Bradley v. Slater,* 58 Neb. 554; *Winder v. Winder,* 86 Neb. 495; *Zitnik v. Union P. R. Co.,* 95 Neb. 152. In this case, the trial court reached the conclusion after a verdict was rendered for plaintiff that its order overruling the motion of defendant for a directed verdict was erroneous. It had the right and power to vacate the judgment and verdict and make an order correcting its supposed error. No good reason suggests itself to us which would prevent a trial judge retracing his steps during the same term to make such orders as seem to him necessary to present a final record free from error. The foregoing action on the part of the trial court was occasioned by its conclusion that as a matter of law no recovery could be had for injuries received as the result of a shock from fright caused by the attack of a dog which did not bite. Had the attack in this case included a bite, there would be no doubt about the right of the plaintiff to recover. In the reported cases are found many glowing

tributes to the dog, similar to those enumerated by the learned trial judge in his opinion. In other cases the dog has been stigmatized as a worthless yelping cur. Mindful of the fact that there are dogs and also other dogs, just as there are people and other people, we attempt to retain our judicial poise and decide this case uninfluenced either by the good or bad dogs we have known.

In order to charge one with liability for the acts of a dog, it must of course be established that he is the owner or keeper. It is so established in this case. It then devolves upon the plaintiff to show that the dog was vicious and that the owner knew the dog to be vicious. The law clearly recognizes the right of the owner of a vicious dog to keep it for the necessary protection of life and property. But as such a dog is inherently dangerous, one exercising the right to keep it must do so at his own risk, and is held strictly liable for any damage resulting to another. 1 R. C. L. 1116, sec. 59. In the case of injury, the gravamen of the action is the knowledge of the owner that the dog has vicious or mischievous propensities. *Warrick v. Farley,* 95 Neb. 565; *Herbert v. Katzberg,* 104 Neb. 395; *Melicker v. Sedlacek,* 189 Ia. 946; *Domm v. Hollenbeck,* 259 Ill. 382. A statute now quite common makes the owner of a dog the insurer of any damage done by said dog, in which the basis of liability is not the negligence in the manner of keeping and confining the animal, but in keeping him at all. See *Wojewoda v. Rybarczyk,* 246 Mich. 641; *Reneau v. Brown,* 9 La. App. 375; *Bottcher v. Buck,* 265 Mass. 4; *Luick v. Sondrol,* 200 Ia. 728; *Miller v. Prough,* 203 Mo. App. 413; *Stine v. McShane,* 55 N. Dak. 745; *Silverglade v. Von Rohr,* 107 Ohio St. 75; *Pritsker v. Greenwood,* 47 R. I. 384. There are a few of the cases which discuss statutes abrogating the common-law rule requiring knowledge on the part of the owner. See note, 1 A. L. R. 1113. However, we have not yet such a statute and the common-law rule is still applicable in this state. Liability of an owner or keeper of a dog whose owner knows of its vicious or mischievous propensities is based upon negligence. Did this dog have vicious or mischievous propensities? There is

no other conclusion deducible from the evidence but that he did have such propensities. The evidence is that the dog bit a small boy in the "calf of his overalls * * * and on the shoes;" that he had attacked two different women at different times, one of whom was kept in her home for half a day through fear of the dog. The owner's knowledge is also well established. At least two people had complained about the dog, and the defendant finally admitted on cross-examination that somebody had complained about him keeping a vicious dog. These are questions of fact, which were presented to the jury, and the finding upon them was properly adverse to the defendant.

The appellee contends and the trial court ruled, that there could be no recovery for injury as a result of shock caused by the attack of a dog unless it was accompanied by a bite. We think this position untenable. Let us review briefly the evidence in this case. This dog had attacked her upon a previous occasion and had been dragged away from her by a member of defendant's family. At the time involved in this controversy, plaintiff was walking along the street where she had a right to pass without interference, when she heard the dog growl, saw him start toward her, crouch down and bare his teeth, whereupon she fainted and knew nothing more until she was picked up. The dog did not leave the owner's premises but was close to the sidewalk. As a result of the shock received from this attack, the plaintiff has suffered from nervous prostration. Much is made in argument of defendant about the small size of the Spitz dog which started this litigation. We may remark that the fear of a dog is not so much caused by his size or his bark as by his biting ability, and that a large part of the fear of a dog is caused by the popular apprehension of tetanic or hydrophobic poison from the bite and the evil results thereof. This is as obvious as that a small bandit behind a good gun will produce just as much fear as a large man. This also is a question of fact.

We have heretofore held that there is a liability for damages for physical injuries which are proximately caused by

fright and terror produced by one who owes a legal duty to the one injured. *Hanford v. Omaha & C. B. Street R. Co.*, 113 Neb. 423. We refer to this case for a thorough and comprehensive discussion of this question.

The owner of a dog, known by him to have vicious and mischievous propensities, owes a legal duty to every one to protect them from injury. He especially owes this duty to a traveler passing along the highway adjacent to his premises. The owner of a dog has no right to let such a dog run at large, attacking and assaulting persons upon the highway. *Nehr v. State*, 35 Neb. 638.

We reluctantly reach the conclusion that there was liability on the part of the defendant to the plaintiff for her injuries and that the action of the trial court in sustaining the motion for a directed verdict and dismissing the action was erroneous. Having reached this conclusion, it follows that the judgment must necessarily be reversed. Section 20-1926, Comp. St. 1929, provides that upon reversal the court shall remand the cause to the district court for such judgment as it should have rendered. In this case, the trial court considered the question of the liability of the plaintiff and instead of granting a new trial vacated the judgment and verdict and dismissed the action. The only question presented by the record is the one discussed herein. It necessarily follows that the first error of the trial court was committed by the entry of the order vacating the judgment and the verdict. In a case such as this, where the trial court sought to correct a supposed error in overruling motion for directed verdict by vacating verdict and judgment thereon and then dismissing the action, this court will, upon reversing the judgment of dismissal, if no other error is presented by the record, remand the cause to the district court, with directions that the verdict and judgment be reinstated. This rule finds support in *Roberson v. Reiter*, 38 Neb. 198, and *Iodence v. Peters*, 64 Neb. 425, although these cases are not strictly analogous. The rule is announced in 4 C. J. 1191, as follows: "Where the trial court reserved its decision on a motion to dismiss or nonsuit and then after a general ver-

dict for plaintiff granted the motion and set aside the verdict, the appellate court, on reversal of the dismissal or nonsuit, may reinstate the verdict and order judgment thereon."

In *Porter v. Sherman County Banking Co.*, 40 Neb 274, we held: "Except where the decision of an appellate tribunal necessitates a trial of an issue for which the Constitution guarantees a trial by jury, it rests in the discretion of the appellate tribunal, upon the reversal of a judgment, to enter in the appellate court a proper judgment, or to remand the case to the court from which it was appealed, either with directions to enter a specific judgment, for a retrial of particular issues, or for a new trial of the whole case." See, also, *Armstrong v. Mayer*, 61 Neb. 355.

The judgment of the trial court in dismissing the action is reversed and the cause remanded, with directions to the trial court to reinstate the verdict and judgment thereon. Since the trial court has not yet ruled upon the motion for new trial, it will then be its duty to pass upon said motion.

REVERSED.