American Family Mutual Insurance Company, appellee
and cross-appellee, v. Rick W. Wheeler,
appellee and cross-appellant, and
Joshua McCrary et al., appellants.

___ N.W.2d ___

Filed January 24, 2014.    No. S-13-240.

1.  **Insurance: Contracts: Appeal and Error.** An insurance policy's interpretation
    presents a question of law that an appellate court decides independently of the
    trial court.
2.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an
    appellate court views the evidence in the light most favorable to the party against
    whom the court granted the judgment and gives such party the benefit of all rea-
    sonable inferences deducible from the evidence.
3.  **Insurance: Contracts: Appeal and Error.** An insurance policy is a contract. An
    appellate court construes insurance contracts like any other contract, according to
    the meaning of the terms that the parties have used.
4.  ____: ____: ____. When an insurance contract's terms are clear, an appellate
    court gives them their plain and ordinary meaning as a reasonable person in the
    insured's position would understand them.
5.  **Insurance: Contracts: Words and Phrases: Appeal and Error.** When an insur-
    ance contract is ambiguous, an appellate court will construe the policy in favor
    of the insured. A contract is ambiguous when a word, phrase, or provision in the
    contract has, or is susceptible of, at least two reasonable but conflicting interpre-
    tations or meanings.
6.  **Insurance: Contracts: Appeal and Error.** An appellate court's goal in
    interpreting insurance policy language is to give effect to each provision of
    the contract.

Appeal from the District Court for Sarpy County: David K.
Arterburn, Judge. Affirmed.

David A. Domina, Brian E. Jorde, and Jeremy R. Wells,
of Domina Law Group, P.C., L.L.O., for appellants Joshua
McCrary et al.

Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon,
L.L.P., for appellee Rick W. Wheeler.

Jane D. Hansen for appellee American Family Mutual
Insurance Company.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-
Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

Ryan Wheeler, Rick Wheeler's son, allegedly sexually assaulted Joshua McCrary and Maren McCrary's minor daughter, C.M. The McCrarys sued Rick for negligence. American Family Mutual Insurance Company (American Family), Rick's liability insurer, sought a declaratory judgment that its policies did not cover Rick, which request the district court granted. The primary issue is whether a severability clause, which requires that the insurance be applied separately to each insured, changes the effect of (or renders ambiguous) exclusions which would otherwise bar coverage for Rick. We conclude that it does neither. We affirm.

## BACKGROUND

### Insurance Policies

Rick has two liability insurance policies with American Family: a homeowners' policy that includes personal liability coverage and a separate personal liability umbrella policy. Both he and Ryan are insureds under the policies. Both policies provide personal liability coverage; the homeowners' policy, for example, provides coverage for "compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence." Both policies define an "occurrence," as an accident or exposure to conditions which results in bodily injury or property damage.

Both policies also contain a long list of exclusions from coverage. As relevant here, the homeowners' policy contains exclusions for "Abuse" and "Intentional Injury." The "Abuse" exclusion reads:

> We will not cover bodily injury or property damage for any insured who participates in, acquiesces to or in any way directs any act of sexual molestation or contact, corporal punishment, or physical or mental abuse of a sexual nature.

The "Intentional Injury" exclusion reads:

> We will not cover bodily injury or property damage caused intentionally by or at the direction of any insured

even if the actual bodily injury or property damage is dif-
ferent than that which was expected or intended from the
standpoint of any insured.

As relevant here, the umbrella policy also contains exclu-
sions for "Sexual Abuse" and "Intentional Injury." The "Sexual
Abuse" exclusion reads:

We will not cover injury arising out of or resulting
from any:

a. Actual or alleged sexual molestation;

b. Corporal punishment; or

c. Physical or mental abuse of a person by an insured.

The "Intentional Injury" exclusion reads:

We will not cover injury caused by or at the direction of
any insured even if the actual injury is different than that
which was expected or intended from the standpoint of
any insured. This exclusion does not apply to personal
injury when your actions are not fraudulent, criminal
or malicious.

Both policies contain identical "Severability of Insurance"
clauses, which provide: "This insurance applies separately to
each insured. This condition will not increase our limit for any
one occurrence."

### Factual and Procedural Background

The McCrarys sued Rick and Ryan for Ryan's alleged
sexual assault of C.M. The McCrarys sued Ryan for intentional
assault, and the McCrarys sued Rick for negligently failing to
warn the McCrarys of Ryan's dangerous nature and for negli-
gently supervising Ryan. Rick submitted a claim for coverage
to American Family for the McCrarys' claims against him.
American Family assumed Rick's defense under a reservation
of rights.

After doing so, American Family filed a complaint for
declaratory judgment. Specifically, American Family—based
on Ryan's alleged intentional conduct and the exclusions in its
policies—sought a judgment that its policies did not "provide
liability coverage to Rick . . . for the claims of the [McCrary]

Defendants and that American Family [had] no duty to defend or indemnify Rick . . . in the [McCrary] lawsuit." Rick and the McCrarys both filed answers generally contesting American Family's position and requesting attorney fees.

American Family then moved for summary judgment, which the district court granted. The court, after reciting the general factual and procedural history, noted that the parties did not dispute that Ryan's alleged conduct was both an intentional act and sexual molestation or abuse. The court noted that all of the parties agreed that the policies did not provide coverage for Ryan.

The court then recited the various exclusions in the insurance policies. Relying on *Volquardson v. Hartford Ins. Co.*,[1] the court ruled that the "an insured" and "any insured" language contained in the exclusions was clear and unambiguous. The court concluded:

> [I]t is clear that the loss claimed by Defendants McCrary was caused intentionally by someone insured under the policy. Additionally, the loss claimed by Defendants McCrary was caused by the sexual abuse committed by Ryan . . . , an insured under the policy. As such, the intentional act exclusion and the sexual abuse exclusion exclude[] coverage to all insureds.

The court then addressed the effect, if any, of the "Severability of Insurance" clause on the policies' coverage. The court noted that this was an issue of first impression in Nebraska and that in other jurisdictions, a split in authority existed. After analyzing cases addressing the issue,[2] the court concluded that "the clear language of the exclusions in [the] policies bar[s] coverage to [Rick] for the claims being made by Defendants McCrary, irrespective of the severability clause." The court granted American Family summary judgment.

---

[1] *Volquardson v. Hartford Ins. Co.*, 264 Neb. 337, 647 N.W.2d 599 (2002).

[2] See, e.g., *American Family Mut. Ins. Co. v. Bower*, 752 F. Supp. 2d 957 (N.D. Ind. 2010); *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748 (Colo. 1990); *Caroff v. Farmers Ins. Co. of Wash.*, 155 Wash. App. 724, 261 P.3d 159 (1999).

ASSIGNMENTS OF ERROR

The McCrarys assign, restated, that the court erred in (1) ruling that the "Severability of Insurance" clause did not require that Rick's coverage be determined based solely on Rick's conduct; (2) ruling that the "Severability of Insurance" clause did not create ambiguity in the policies' coverage; and (3) failing to award the McCrarys attorney fees.

On cross-appeal, Rick assigns that the court erred in making any rulings as to Ryan, over whom it did not have personal jurisdiction.

STANDARD OF REVIEW

[1,2] An insurance policy's interpretation presents a question of law that we decide independently of the trial court.[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the court granted the judgment and gives such party the benefit of all reasonable inferences deducible from the evidence.[4]

ANALYSIS

The parties agree that if there were no severability clause, the exclusions would bar coverage for Rick (based on Ryan's conduct). The issue, then, is whether the severability clause affects the exclusions' otherwise clear application. The McCrarys argue that the effect of the severability clause is to treat each insured as if he had his own insurance policy. That being the case, and because Rick's liability hinges on his own alleged negligence,[5] the McCrarys argue coverage for Rick must be determined based solely on Rick's alleged negligence. And if that were true, the policies would cover Rick. Alternatively, the McCrarys argue that the severability clause (when read with

---

[3] See, e.g., *Federated Serv. Ins. Co. v. Alliance Constr.*, 282 Neb. 638, 805 N.W.2d 468 (2011)

[4] *Id.*

[5] See, *Sinsel v. Olsen*, 279 Neb. 38, 777 N.W.2d 54 (2009); *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998), *abrogated on other grounds, A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

the exclusions) at least renders the policies ambiguous, which we must construe in favor of coverage.

[3-5] We begin by setting forth certain well-known principles for interpreting insurance policies. An insurance policy is a contract.[6] We construe insurance contracts like any other contract, according to the meaning of the terms that the parties have used.[7] When an insurance contract's terms are clear, we give them their plain and ordinary meaning as a reasonable person in the insured's position would understand them.[8] But when an insurance contract is ambiguous, we will construe the policy in favor of the insured.[9] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[10]

The severability clause in each policy reads: "This insurance applies separately to each insured. This condition will not increase our limit for any one occurrence." Severability clauses are common in insurance contracts, as is this particular language.[11] Historically, severability clauses became part of the standard insurance industry form contract in 1955 to clarify "'what insurance companies had intended all along, namely that the term "the insured" in an exclusion refer[red] merely to the insured claiming coverage.'"[12] As noted by the parties, however, the question is not how the severability clause affects exclusions referencing "the insured," but, rather, how it affects exclusions (such as the ones in this case) referencing "an insured" or "any insured."

---

[6] *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003).

[7] See *Federated Serv. Ins. Co., supra* note 3.

[8] See *id.*

[9] See *Guerrier, supra* note 6.

[10] *Id.*

[11] See, e.g., *United Services Auto. Ass'n v. Neary*, 307 P.3d 907 (Alaska 2013).

[12] *Michael Carbone, Inc. v. General Acc. Ins. Co.*, 937 F. Supp. 413, 419 (E.D. Pa. 1996) (citing *State, Dept. of Transp. v. Houston Cas.*, 797 P.2d 1200 (Alaska 1990)). See, also, *Ohio Cas. Ins. Co. v. Holcim (US)*, 744 F. Supp. 2d 1251 (S.D. Ala. 2010).

Courts across the country have grappled with this issue, and there is a split in authority.[13] Commentators also disagree.[14] A majority conclude that severability clauses do not nullify plainly worded exclusions and that they therefore have no effect on exclusions referencing "an insured" or "any insured."[15] A minority conclude that severability clauses require that "insurance coverage and any exclusion of coverage . . . be judged [solely] on the basis of [each insured's] particular conduct and acts within [the insured's] control."[16] Or at the very least, they conclude that severability clauses create ambiguity as to the scope of exclusions referencing "an insured" or "any insured," which a court must construe in favor of coverage.[17]

A good example of the rationale behind the majority position is *American Family Mutual Ins. Co. v. Corrigan*.[18] In that case, Mark Francke pleaded guilty to child endangerment for injuries suffered by Jeffrey and Kirsten Corrigan's child while at Mark's daycare. Mark ran his daycare in the home of his father, Harold Francke. The Corrigans sued Mark "based on his allegedly negligent, reckless, and/or intentional conduct resulting in serious harm to" their child, and they sued Harold for various claims of negligence, including failure to warn and failure to supervise.[19] Harold's liability insurer sought a declaratory judgment that its policy did not cover the claims.

---

[13] Compare, e.g., *Holcim (US), supra* note 12, and *American Family Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108 (Iowa 2005), with *Bower, supra* note 2, and *Minkler v. Safeco Ins. Co. of America*, 49 Cal. 4th 315, 232 P.3d 612, 110 Cal. Rptr. 3d 612 (2010).

[14] Compare, e.g., 3 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 11.8 (6th ed. 2013); 3 New Appleman Law of Liability Insurance § 20.02[7][c] (rev. ed. 2013); Hazel Glenn Beh, *Tort Liability for Intentional Acts of Family Members: Will Your Insurer Stand by You?*, 68 Tenn. L. Rev. 1 (2000).

[15] See, e.g., *Holcim (US), supra* note 12.

[16] *Bower, supra* note 2, 752 F. Supp. 2d at 971.

[17] See, e.g., *Minkler, supra* note 13.

[18] *Corrigan, supra* note 13.

[19] *Id.* at 110.

As to the claims against Harold, the trial court disagreed and concluded that the various exclusions did not apply to Harold, because the Corrigans "'[did] not seek to hold Harold vicariously liable for Mark's actions, but assert[ed] separate claims against Harold for negligence.'"[20]

On appeal, the Iowa Supreme Court focused solely on the policy's criminal acts exclusion (finding it dispositive), and reversed. That exclusion stated that the insurer would not "'cover bodily injury or property damages arising out of . . . violation of any criminal law for which any insured is convicted.'"[21] The court concluded that the exclusion's plain language barred coverage not only for Mark, but also for Harold. And the court rejected the Corrigans' argument that the policy's severability clause, which stated that the insurance "'applie[d] separately to each insured,'" mandated a different result.[22]

The court acknowledged that it had held differently in a prior case involving a severability clause, but noted that that case involved an exclusion referencing "the insured" rather than "any insured." The court explained that "[the insurer's] use of the term 'any insured' in its criminal acts exclusion unambiguously convey[ed] an intent to exclude coverage when recovery is sought for bodily injury proximately caused by the criminal act of *any* insured."[23] Although the Corrigans suggested that the severability clause required that Harold be viewed as the sole insured under the policy, the court concluded that such an interpretation was unreasonable "[b]ecause the language of the exclusion clearly contemplate[d] its applicability to multiple insureds under the policy . . . ."[24] And the court concluded that to interpret the policy as the Corrigans suggested "would require [the] court to conclude the term 'the insured' mean[t] the same as 'any insured,'" a conclusion it had rejected in the

---

[20] *Id*. at 111.

[21] *Id*. at 112.

[22] See *id*.

[23] *Id*. at 116 (emphasis in original).

[24] *Id*.

past.[25] Because such an interpretation was unreasonable, the court concluded that the severability clause did not render the exclusion ambiguous and that the exclusion's plain language excluded Harold from coverage under the policy.[26]

A good example of the rationale behind the minority position is *American Family Mut. Ins. Co. v. Bower*.[27] In that case, Jonathan Bower sexually molested a minor. The minor sued Bower and, as relevant here, also sued Bower's parents for their alleged negligence in Bower's assaults. Bower's parents sought coverage under their homeowners' insurance liability policies. Their insurer then sought declaratory judgment that its policies (by way of multiple exclusions from coverage) did not cover the claims against Bower's parents. As here, the policies contained certain exclusions referencing "any insured" and also contained a severability clause stating that "'this insurance applies separately to each insured.'"[28]

The federal district court concluded that those exclusions did not bar coverage for Bower's parents. Regarding the insurer's argument that the severability clause had no effect on the unambiguous exclusions referencing "any insured," the court disagreed. The court concluded that "adopting [the insurer's] reasoning . . . would make the severability provision superfluous."[29] The court then reasoned:

> [A] reasonable insured would believe from the severability provision that [his or her] insurance coverage and any exclusion of coverage would be judged on the basis of [the insured's] particular conduct and acts within [his or her] control. To then exclude coverage on the basis of another insured's conduct creates a conflict between the two provisions and denies the reasonable insured the coverage protection which the severability provision affords.[30]

---

[25] *Id.*

[26] See *Corrigan, supra* note 13.

[27] *Bower, supra* note 2.

[28] See *id.* at 962.

[29] *Id.* at 970.

[30] *Id.* at 971.

As such, the court held that the severability clause required the exclusions to be applied to each insured based on each insured's own conduct.[31]

Summed up, the majority position emphasizes the plain meaning of the "an insured" or "any insured" language in a particular exclusion.[32] It emphasizes that the severability clause's command to apply the insurance separately to each insured does not change the exclusion's plain language or create ambiguity in its application.[33] The minority position, on the other hand, concludes that the severability clause's command to apply the insurance separately to each insured requires that each insured's conduct be analyzed as if he or she were the only insured under the policy.[34] Or, at the very least, such an interpretation is a reasonable one, making the policy ambiguous, which a court must construe in favor of coverage.[35]

We find the majority position more persuasive and adopt it here. It is consistent with our oft-stated approach to give language in an insurance contract its plain meaning.[36] We have in the past concluded that the "an insured" language, and implicitly the "any insured" language, is clear and unambiguous.[37] Such language means what it says, and the severability clause does not operate to override this clear and unambiguous language.[38] In other words, applying the insurance separately to each insured, as the severability clause requires, does not change that the exclusions reference "an insured" or "any insured." As one appellate court explained,

---

[31] See *Bower, supra* note 2.

[32] See, e.g., *Corrigan, supra* note 13.

[33] See, e.g., *Holcim (US), supra* note 12; *Chacon, supra* note 2.

[34] See, e.g., *Bower, supra* note 2.

[35] See, e.g., *Minkler, supra* note 13; *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fl. App. 1994).

[36] See *Federated Serv. Ins. Co., supra* note 3.

[37] See *Volquardson, supra* note 1.

[38] See, *Corrigan, supra* note 13; *T.B. ex rel. Bruce v. Dobson*, 868 N.E.2d 831 (Ind. App. 2007); *Argent v. Brady*, 386 N.J. Super. 343, 901 A.2d 419 (2006); *Caroff, supra* note 2.

"The act of applying the policy separately to each insured does not alter or create ambiguity in the substance or sweep of the exclusion."[39]

[6] Our goal in interpreting insurance policy language is to give effect to each provision of the contract.[40] Adopting the minority position would render the "an" or "any" language superfluous, while adopting the majority position would not.[41] Further, we do not agree with the McCrarys' argument that the majority position renders the severability clause meaningless. First, the severability clause affects the interpretation of exclusions referencing "the insured."[42] There are such exclusions in these policies, such as the "Illegal Consumption of Alcohol" exclusion. And second, as American Family explained at oral argument, the severability clause still has application outside of its role in interpreting the scope of exclusions.[43]

Here, the exclusions (generally speaking) bar coverage for injuries intentionally caused by "any insured" and injuries resulting from sexual abuse by "an insured" or "any insured." The meaning of that language is plain. We hold that a severability clause stating that the insurance "applies separately to each insured" does not change that language, its meaning, or its application. We agree with the district court that the policies excluded Rick from coverage for injuries resulting from the alleged intentional sexual abuse of C.M. committed by Ryan (an "insured" under the policies). We conclude that the McCrarys' first two assigned errors lack merit. As for the third, in which the McCrarys ask for attorney fees, we note that such fees are not warranted because judgment for American Family is proper.[44]

---

[39] *SECURA Supreme Insurance Company v. M.S.M.*, 755 N.W.2d 320, 329 (Minn. App. 2008).

[40] See *Guerrier, supra* note 6.

[41] See, *Adams, supra* note 35; *Worcester Mutual Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158 (1986).

[42] See *Holcim (US), supra* note 12.

[43] See 3 Windt, *supra* note 14.

[44] See Neb. Rev. Stat. § 44-359 (Reissue 2010). See, also, *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998).

We briefly note Rick argues on cross-appeal that the district court lacked personal jurisdiction over Ryan and that, so, any rulings as to Ryan were void.[45] All the parties agree on this point, as do we, though it seems to us that the court's observations as to Ryan were simply incidental to determining whether Rick was covered under the policy. But to the extent the court's order makes rulings as to Ryan, such rulings are ineffectual.

## CONCLUSION

We conclude that the severability clause does not affect the unambiguous language of the policies' exclusions, which bar coverage for Rick.

AFFIRMED.

WRIGHT, J., not participating.

---

[45] See, *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011); *In re Interest of William G.*, 256 Neb. 788, 592 N.W.2d 499 (1999).